# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAGOBERTO PACHECO-MATA,<br><br>Defendant. | No. 20-cr-15-CJW<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |

_____

## I.   INTRODUCTION

This case is before me pursuant to Defendant's Motion to Withdraw Guilty Plea. (Doc. 28.) Defendant entered a guilty plea on March 11, 2020 to Count 1 of a one-count Indictment, charging him with being Found After Illegal Re-Entry in violation of 8 U.S.C. Section 1326(a). Defendant now wishes to withdraw his guilty plea on the grounds that his conviction will jeopardize his chance of obtaining asylum in the United States.

The Honorable C.J. Williams, United States District Court Judge, referred this motion to me for a report and recommendation. On May 7, 2020, I held a hearing on Defendant's motion. Defendant declined to offer any evidence. Defendant's counsel made a proffer, to which the Government made no objection. The Government offered no evidence.

For the reasons that follow, I respectfully recommend that the Court deny Defendant's motion to withdraw his guilty plea.

## II.   FINDINGS OF FACT

On February 20, 2020 the grand jury returned an indictment against Defendant charging him with being Found After Illegal Re-Entry. (Doc. 2.) More specifically,

1

the indictment charges as follows:

> On or about February 5, 2020, in the Northern District of Iowa, the defendant, DAGOBERTO PACHECO-Mata, an alien, was found in the United States after having been removed from the United States. Defendant had been removed on or about November 22, 2011, and did not obtain the express consent of the Attorney General of the United States or his successor, the Secretary for Homeland Security (Title 6, United States Code, Section 202(3) and (4) and Section 557), to reapply for admission to the United States prior to reentering the United States.
>
> This was in violation of Title 8, United States Code, Section 1326(a).

(*Id*.) At his February 21, 2020 initial appearance, I appointed Assistant Federal Public Defender Christopher Nathan to represent Defendant. (Doc. 7.) The Government moved to detain Defendant and Defendant waived a detention hearing. (Doc. 8.) Thus, Defendant remains in custody.

At 10:11 a.m. on March 11, 2020, Defendant appeared before me and entered a plea of guilty. (Doc. 16.) Because Defendant speaks Spanish, the Court employed a certified interpreter who was duly sworn and who remotely provided simultaneous translation of the proceedings. (Doc. 17 at 1.) There is no claim here that Defendant did not understand the interpreter or that he did not understand any aspect of the guilty plea proceedings.

No transcript of that hearing has been ordered, but I have reviewed the audio recording of the hearing. The plea hearing followed a course that is familiar to this Court and the criminal bar that practices before it. At the beginning of the hearing, Defendant confirmed that he had the opportunity to discuss the charges in detail with Mr. Nathan and that he intended to plead guilty. I confirmed Defendant was agreeable to entering his plea before a United States Magistrate Judge. I placed Defendant under oath and made inquiries to ascertain whether there was reason to believe he was not competent. He appeared competent. I told him that it was important that he understood

everything that happened. Defendant told me he would stop me if he did not understand something that was said.

When I advised him of his constitutional rights, he confirmed he understood his right to counsel. When asked whether Defendant had been generally satisfied with Mr. Nathan's services, he confirmed that he was.

I discussed each element of the offense with Defendant. As per my standard practice, I relied on a Rule 11 letter submitted in advance of the plea hearing by the Government to discuss the elements of the offense with Defendant. The Rule 11 letter stated the following elements of the offense:

> The elements of a violation of Title 8, United States Code, Section 1326(a) as charged in Count 1 are:
> (1) Defendant is an alien;
> (2) Defendant was previously removed from the United States on or about November 22, 2011;
> (3) Thereafter, on or about February 5, 2020, defendant was found in the United States, specifically in the Northern District of Iowa; and
> (4) Defendant did not have the express consent of the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to re-enter the United States.

I have made the Rule 11 letter a part of the record by filing it as Court Exhibit 1. Thus, Defendant admitted he had committed each of the elements of the crime charged.

The parties did not enter into a plea agreement. I confirmed that no such agreement had been offered by the Government.

Because Defendant admitted that he is an alien, I spoke with Defendant about the impact of this conviction on his immigration status. He confirmed his understanding that he would likely be deported after serving his prison sentence and the consequences (i.e., revocation of supervised release) if he returned to the United States during his

supervision.  He confirmed his understanding that the conviction could affect his ability to ever legally reenter the United States or become a United States citizen.  Defendant confirmed that he had spoken to Mr. Nathan about these immigration consequences prior to the hearing.  The topic of asylum did not arise.  There was no discussion of any pending or potential asylum application by Defendant or his spouse and no discussion of the possible impact of a conviction on any effort to obtain asylum in the United States.

I warned Defendant that if he pleaded guilty and the district court accepted his guilty plea, he would have no right to withdraw that guilty plea even if he later changed his mind.  He acknowledged his understanding of this limitation.  Defendant denied that anyone had forced, pressured, or threatened him in any way to get him to plead guilty.  He confirmed that his decision to plead guilty was a voluntary decision before he formally pleaded guilty.

Defendant remained in custody after the plea hearing.  On March 12, 2020, I filed my Report and Recommendation recommending the Court accept the guilty plea.  (Doc. 17.)  On March 27, 2020, the Court accepted that recommendation, noting that neither party had objected.  (Doc. 19.)

The United States Probation Office filed a Draft Presentence Investigation Report on March 31, 2020.  (Doc. 20.)  Defendant filed an objection to this draft report on April 3, 2020.  (Doc. 21.)  Defendant merely sought to correct his reported height.  He did not take objection to any of the facts underlying the offense.  A final Presentence Investigation Report ("PSIR") was filed on April 14, 2020. (Doc. 23.)

Defendant relies heavily on the PSIR to establish certain facts supporting the instant motion:

> The Defendant is a citizen and native of Honduras.  Docket No. 23, at ¶ 4.  He has never been lawfully present in this country.  Id.  Immigration records demonstrate that he was previously ordered removed on November 2, 2011, and was actually removed on November 22, 2011.  Id., at ¶ 5.

> He unlawfully reentered on an unknown date. Id. Unfortunately, discovery materials do not reflect that he returned through a port of entry. Id.
>
> While the record is silent regarding when he reentered, the Defendant is in a relationship with Ana Alvarez Cruz, who resides in Tama, Iowa. Id., at ¶ 29. And, on March 10, 2020, Ana gave birth to her and the defendant's first child. Id. Other than immigration offenses, the Defendant's only criminal history in this country is for driving without a driver's license. Id., at ¶¶ 6, 19-25.

(Doc. 28-1 at 2.)

I held a hearing on the instant motion on May 7, 2020. Defendant appeared with Mr. Nathan. At the hearing, Mr. Nathan made a proffer on behalf of Defendant stating that prior to the plea hearing he had not discussed asylum with Defendant or the impact that a plea of guilty would have on his eligibility to seek asylum. Mr. Nathan stated that the genesis of the motion was a discussion he had with Defendant's immigration attorney. In that "robust" conversation, the immigration attorney asserted that the conviction would render Defendant ineligible to apply for asylum as Defendant intended. I heard the parties' arguments in support of their positions and took the matter under advisement.

### III.  THE PARTIES' POSITIONS

Defendant does not allege that the Court committed any Rule 11 violation at the plea hearing. Rather, Defendant contends under Rule 11(d)(2) there is a fair and just reason to permit him to withdraw his plea: i.e., that the plea and/or conviction will adversely affect his application for asylum. Defendant was somewhat coy about whether he contends he is innocent of the charge. He admits that his brief does not contain an express claim of innocence but denies his brief amounts to an admission of guilt. Defendant acknowledges he did not object to the factual allegations of the PSIR. Defendant argues that the amount of prejudice the Government will suffer as a result of

the withdrawal of the plea is minimal. Defendant contends the motion was not unduly delayed.

In response to my questions, Mr. Nathan described how the case would likely proceed if Defendant were permitted to withdraw his guilty plea. He acknowledged there does not appear to be a winning defense to the charge. Defendant has been careful not to expressly claim actual innocence in order to avoid a longer sentence for obstructing justice. Mr. Nathan represented, based on his conversation with Defendant's immigration attorney, that a conviction "on the front end or the back end" would be "problematic" for his asylum application. I take this to mean that Defendant believes that whether he is convicted before or after his asylum application is granted, the conviction could render him ineligible for asylum.

The Government argues there is not a fair and just reason to permit Defendant to withdraw his plea of guilty. The Government argues that there was no violation of the requirements of Rule 11. Indeed, the parties are in agreement that the colloquy at the plea hearing conformed with Rule 11(b)(1)(O) which required me to determine that Defendant understood "that, if convicted, . . . [he] may be removed from the United States, denied citizenship, and denied admission to the United States in the future." The Government notes that I ascertained that Mr. Nathan had informed Defendant that he risked deportation upon conviction as required by *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010).

The Government asserts that Defendant's intent to apply for asylum is not a reason to allow withdrawal of his guilty plea. The Government relies on *United States v. Carrillo-Estrada*, which held, "[T]he possibility of seeking asylum is not a *consequence* of conviction—either direct or indirect. Rather, it is an avenue for *avoiding* the consequence of deportation." 564 F. App'x 385, 388 (10th Cir. 2014) (unpublished opinion) (emphasis in original). The Government points out that Defendant is not

6

guaranteed asylum regardless of his conviction and that there are many potential obstacles to his application. However, the Government notes that at the present time Defendant's conviction for being Found After Illegal Reentry is not presently a bar to eligibility for asylum, but a proposed rule change may make it a bar.

The Government also argues that Defendant does not claim to be innocent, his motion was delayed, and the Government will be prejudiced if the motion is granted.

### IV. ANALYSIS

"A Defendant has no absolute right to withdraw a guilty plea." *United States v. Nichols,* 986 F.2d 1199, 1201 (8th Cir. 1993). A district court may allow a Defendant to withdraw his guilty plea if he shows a "fair and just reason," Fed. R. Crim. P. 11(d)(2)(B), but a guilty plea should not "be set aside lightly." *United States v. Prior,* 107 F.3d 654, 657 (8th Cir. 1997). "'The defendant bears the burden of showing fair and just grounds for withdrawal.'" *United States v. Rollins,* 552 F.3d 739, 741 (8th Cir. 2009) (quoting *United States v. Mugan,* 441 F.3d 622, 630-31 (8th Cir. 2006)). "When a Defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" *United States v. Morrison,* 967 F.2d 264, 268 (8th Cir. 1992) (quoting *United States v. Rawlins,* 440 F.2d 1043, 1046 (8th Cir. 1971)).

> Even if such a fair and just reason exists, before granting the motion a court must consider "whether the Defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Nichols,* 986 F.2d 1199, 1201 (8th Cir. 1993). Where the court sees no fair and just reason to permit withdrawal, however, these additional matters need not be considered." *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005).

*United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006).

In order to be constitutionally valid, "a guilty plea must be knowing, voluntary, and intelligent." *United States v. Martinez-Cruz,* 186 F.3d 1102, 1104 (8th Cir. 1999) (citation omitted). Federal Rule of Criminal Procedure 11 requires a court when taking a guilty plea to conduct a colloquy with the Defendant to ensure that the district court only accepts a knowing, voluntary, and intelligent guilty plea. Fed. R. Crim. P. 1l(b)(l)-(3) (requiring the court to advise the defendant of the rights he is giving up by pleading guilty, question the defendant regarding the voluntariness of his decision to plead guilty, and determine that a factual basis exists for the plea).

Here, Defendant does not find fault with the plea hearing in the sense that I failed to make adequate inquiry and determine his understanding of the topics covered in Rule 11(b). However, I interpret his motion as a claim that his plea was not completely "knowing." In other words, Defendant essentially claims that if he had known that a guilty plea and/or conviction would affect his ability to obtain asylum, he would not have entered a plea of guilty. This, he argues is a fair and just reason to set aside a guilty plea.

Although the evidence here is thin, I conclude Defendant has a sincere desire to set aside his guilty plea to further his asylum claim. At the hearing, I asked Mr. Nathan questions to determine that the request did not arise from any effort to delay the proceedings and was not gamesmanship arising from the difficulty the Court faces in empaneling a jury because of the COVID-19 pandemic. I am satisfied that the motion is not the product of any gamesmanship or any desire to delay the proceedings. Nevertheless, this does not end the inquiry regarding whether there is a fair and just reason to permit Defendant to withdraw his plea.

Both parties point to *Carrillo-Estrada* as the case most on point. 564 Fed. Appx. 385. In *Carillo-Estrada*, the defendant pleaded guilty and was sentenced. *Id.* at 386. The defendant did not, as in the case at bar, seek to withdraw his plea under Rule 11(d)

8

on the basis of some fair and just reason. Rather, the defendant argued on appeal that his due process rights were violated because he was insufficiently advised of the possibility of seeking asylum for himself and his family before entering his guilty plea. *Id*. at 388. *Carrillo-Estrada* held:

> His tacit assumption notwithstanding, the possibility of seeking asylum is not a *consequence* of conviction—either direct or indirect. Rather, it is an avenue for *avoiding* the consequence of deportation. Mr. Carrillo–Estrada has no explanation to the contrary and indeed presents no authority whatsoever for the proposition that a defendant has a right to be advised of asylum procedures prior to pleading guilty.

*Id*. I do not have reason to disagree with this conclusion, but it does not directly address the issue before the Court. Defendant does not seek to extend *Padilla* to recognize a right to be advised of the effect of a conviction on an asylum application. Rather, Defendant contends subsequently learning of the effect of his conviction on such an application is a fair and just reason for withdrawing the plea. There may be no right to be advised of the effect of a conviction on asylum at a guilty plea hearing. However, the question here is whether learning of that effect after a plea hearing constitutes a fair and just reason to withdraw the plea. The answer to this question may be different.

*United States v. Yansane* presents a helpful analogy. 370 F. Supp. 3d 580 (D. Md. 2019). In *Yansane*, the court undertook the following colloquy at the plea hearing:

> THE COURT: I know you stated you are a U.S. citizen, but I should tell you that if someone is not a U.S. citizen, that person, by pleading guilty could have—there could be an impact on that person's residency or status with immigration authorities, including that it may provide a basis for deportation or exclusion or may prevent someone from becoming a U.S. citizen. Do you understand that?
>
> THE DEFENDANT: I do.

*Id*. at 583. Subsequently, in preparing the PSIR, the United States Probation Office discovered the defendant was not a United States Citizen. *Id*. at 584. The defendant

9

sincerely believed from the time he lawfully entered the United States at age six that he was a United States citizen. *Id.* at 588. *Yansane* held:

> Because he had this mistaken belief, the Court finds that at the time that Yansane pleaded guilty, he did not understand the immigration consequences he faced upon conviction. The fact that the Court and the plea agreement generally notified him that a noncitizen who pleads guilty could face deportation and other immigration consequences did not cure his misunderstanding. Where Yansane had an honest and reasonable belief that he was a U.S. citizen, such warnings did not actually put him on notice that he could face deportation upon conviction, much less that based on the charged crimes, he actually faced an effective certainty that he will be deported after conviction.

*Id.* (citation omitted).

*Yansane* helps frame the issue, but the case at bar seems more difficult. *Yansane* had no trouble concluding that the defendant's ignorance of the facts regarding his immigration status made his plea unknowing. Although the defendant was advised that non-citizens could be deported, he had no reason to perceive that consequence would apply to him. The revelation of his citizenship status in the PSIR changed him from someone who had no reason to suspect he might be deported to someone who almost certainly would be deported.

Defendant's case is not so compelling. There was no mistake of fact that prevented Defendant from understanding his rights under *Padilla*. Rather, there appears to have been a lack of communication between his counsel regarding the wisdom of entering a guilty plea. This is not to find fault with Defendant's attorneys. I see no reason a miscommunication between attorneys on an important subject could not be a "fair and just" reason to withdraw a plea. However, the subject of that miscommunication (i.e., the mere possibility of obtaining asylum) is not a fair and just reason, as was the certainty of deportation discussed in *Yansane*.

10

The record in this case is unclear regarding the effect of a conviction on Defendant's chances for seeking asylum. The Government acknowledges that the rule may change to make the conviction a bar to asylum. It is also unclear whether the conviction, even if not a bar, could still have a harmful impact on Defendant's asylum application. In other words, to the extent the decision to grant asylum is discretionary, it is unclear whether the conviction would operate against Defendant's case. Based on Mr. Nathan's representations, Defendant's immigration attorney seems to be strongly opposed to the guilty plea for these reasons.

On a related matter, the Government points to obstacles to obtaining asylum other than Defendant's guilty plea and conviction. There is, however, no evidence one way or the other regarding whether Defendant's asylum case is meritorious. Mr. Nathan represented that Defendant's immigration lawyer strongly disagreed with the decision to plead guilty. However, Defendant offered no evidence that the unidentified lawyer believes Defendant has a strong case. Other than criminal immigration proceedings and naturalization ceremonies, my involvement in immigration matters is limited. A mini-trial regarding the strength of Defendant's asylum case might not be appropriate. Nevertheless, Defendant bears the burden of establishing a fair and just reason to withdraw his plea. A potentially strong asylum case could help establish a fair and just reason. If, for example, the evidence showed Defendant was anticipating receiving asylum soon but for this conviction, this might support a fair and just reason to withdraw a guilty plea. Here, the mere fact of application for asylum with no evidence regarding the likelihood of Defendant's success does not support his position.

Having concluded that there is no fair and just reason to permit Defendant to withdraw his plea, the Court's analysis could end. *United States v. Wojcik*, 60 F.3d 431, 434 (8th Cir. 1995); *United States v. Abdullah*, 947 F.2d 306, 311-12 (8th Cir. 1991). However, the Court may disagree with my conclusion on this issue. Therefore,

I will analyze the remaining factors set forth in *United States v. Boone* that "are to be considered in determining whether to allow a pre-sentence motion to withdraw a plea":

> [1] whether defendant asserts his legal innocence of the charge; [2] the length of time between the guilty plea and the motion to withdraw; and [3] if the defendant established a fair and just reason for withdrawal, whether the government will be prejudiced.[1]

869 F.2d 1089, 1091–92 (8th Cir. 1989).

Defendant has not made any showing of actual innocence. A district court does not abuse its discretion where it does not allow a Defendant to withdraw his plea based on inherently unreliable allegations unsupported by specific facts. *See United States v. Haubrich,* 744 F.3d 554, 557 n.2 (8th Cir. 2014). A "mere assertion of innocence, absent a substantial supporting record, will not be sufficient to overturn a denial of a motion to withdraw." *United States v. Ludwig,* 972 F.2d 948, 951 (8th Cir. 1992) (quotation, alteration, and citation omitted). Here the Defendant has not even asserted his actual innocence.

I find that Defendant's motion was timely filed. The motion was filed six weeks after his plea hearing and only six days after defense counsel was notified by Defendant's immigration attorney of Defendant's desire to withdraw his guilty plea. (Doc. 28-1 at 1.) Four days prior to filing the instant motion, Defendant filed an unresisted motion to continue his sentencing hearing based on his anticipated filing of this motion. (Doc. 26.) The motion was granted on April 24, 2020. (Doc. 27.) Thus, there is no hearing date standing open on the calendar.

I find the Government would not be greatly prejudiced were the Court to permit Defendant to withdraw his guilty plea. The Government argues:

---

[1] The first *Boone* factor is whether the defendant "established a fair and just reason to withdraw his plea." 869 F2d at 1091.

12

> If the case were to proceed to trial, witnesses would need to be served for the trial, jurors notified and other trials and court matters delayed. Considering the expense and delays, the government would be greatly prejudiced if defendant were allowed to withdraw his guilty plea.

(Doc. 29-1 at 10.) This hardly constitutes prejudice. These activities are merely those the Government would have had to undertake if Defendant had never entered a guilty plea. Having to *repeat* this work might constitute some prejudice. "[A]llowing [a defendant] to withdraw his plea and forcing the government to prepare its case once again would prejudice the government." *United States v. Durham,* 178 F.3d 796, 799 (6th Cir. 1999). *See also United States v. Miell,* 711 F. Supp. 2d 967, 991 (N.D. Iowa 2010) (finding prejudice where the government would be required to prepare for trial a second time, (citing *Durham*, 178 F.3d at 799)). The Government is not arguing that it has to repeat any work. Nor has the Government asserted any other prejudice such as the disappearance or death of witnesses.

Finally, I take this opportunity to address the elephant in the courtroom. There seems abundant evidence that could support a conviction. Defendant admitted all of the elements at the plea hearing. He did not object to the PSIR. He is (perhaps prudently) not claiming to be actually innocent of the charges. Mr. Nathan admits there is no defense to the charge. Nevertheless, the cases suggest that I do not attempt to weigh the likelihood of Defendant's ultimate conviction, only that I consider whether Defendant claims to be innocent. *U.S. v. Webster* held,

> [Defendant] cites *Gearhart v. United States*, 106 U.S. App. D.C. 270, 272 F.2d 499 (1959), for the proposition that ". . . the District Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." *Id*., at 502.
>
> While we agree with the holding in *Gearhart*, we do not find it applicable here. The district court did consider, *inter alia*, Webster's detailed confession, his gratuitous remarks to the deputy marshal, and his statements

13

> made in response to the inquiries mandated by Rule 11, but the memorandum opinion of that court makes it clear that these were considered only as they relate to the issue necessarily raised by Webster's motion, i.e. the issue of coercion. Where the district court has stated explicitly the purpose for which such evidence is considered and that purpose is legitimate, we cannot find that such consideration was improper merely because such evidence hypothetically could have been used for an impermissible purpose. Courts often consider Rule 11 proceedings in determining the merits of a motion to withdraw a guilty plea. *United States v. Youpee, supra; Kadwell v. United States, supra; United States v. Fernandez*, 428 F.2d 578 (2d Cir. 1970).

468 F.2d 769, 771 (9th Cir. 1972) (ellipses in original). "In a hearing on a presentence motion to withdraw a guilty plea, the court should not attempt to decide the merits of a claim related directly to the merits of the charge against the defendant, thus passing on the question of his guilt or innocence." *United States v. Ulano*, 468 F. Supp. 1054, 1062 (C.D. Cal. 1979) (citations omitted), *aff'd*, 614 F.2d 1257 (9th Cir. 1980), *rev'd on other grounds in part*, 625 F.2d 1383 (9th Cir. 1980).

In the instant case, I questioned Defendant's counsel regarding how the case would ideally progress on his client's behalf. I did so not to assess his guilt or innocence but to determine if Defendant claimed to be innocent or if something had changed in his assessment of the case since the guilty plea that might be a fair and just reason to withdraw the guilty plea. Thus, I have been careful not to consider Defendant's guilt or innocence or attempt to weigh the probability that Defendant will be found guilty. Rather, I have merely considered the fact he has not claimed to be innocent, offered any proof of that position, or provided another basis to support a fair and just reason to withdraw his plea.

As stated above, I recommend the Court deny the motion because Defendant has not established a fair and just reason to withdraw his guilty plea. If the Court concludes otherwise and reaches the remaining *Bloom* factors, I recommend the Court conclude those factors favor permitting Defendant to withdraw his plea. While he has not claimed

14

to be innocent (much less attempted to support a claim of innocence), the other factors weigh in his favor. The motion was reasonably prompt after Defendant learned of the alleged impact on his asylum claim and the Government will not be prejudiced under these circumstances.

## V.  CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** Defendant's motion to withdraw his guilty plea. (Doc. 28.)

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 19th day of May, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa